William RADOBENKO and Mary G. Radobenko, his wife, individually and as husband and wife, Plaintiffs-Appellants,

v.

AUTOMATED EQUIPMENT CORPORATION, a California corporation, et al., Defendants-Appellees.

No. 73–2897.

United States Court of Appeals, Ninth Circuit.

June 18, 1975.

---

Manfred R. Wetzel (argued), Phoenix, Ariz., for plaintiffs-appellants.

Paul G. Ulrich (argued), Phoenix, Ariz., for defendants-appellees.

## OPINION

Before KOELSCH and DUNIWAY, Circuit Judges, and KELLEHER,* District Judge.

KELLEHER, District Judge:

This appeal is from an order granting appellees summary judgment in an action brought by appellants William and Mary Radobenko for breach of contract, fraud, breach of fiduciary duty, and other wrongful acts. We affirm.

### I

In May of 1969, William Radobenko, a mechanical engineer, entered into stock and guaranty agreements with Kasper Instruments, Inc. (hereinafter Kasper) for the purpose of incorporating Automated Equipment Corporation (hereinafter AEC). Kasper, a California corporation, is engaged in the production of equipment designed to manufacture semiconductors and integrated circuits in the electronics industry. AEC, also a California corporation, was incorporated to engage in the same business as Kasper. Pursuant to an employment contract between Radobenko and AEC, Radobenko agreed to contribute his engineering and managerial skills to AEC as Vice-President and General Manager for a salary of not less than $24,000 a year.[1]

---

* Honorable Robert J. Kelleher, United States District Judge, Central District of California, sitting by designation.

1. The agreements between the parties consisted of three separate documents: a pre-incorporation agreement, a guaranty agreement and an employment contract.

Pursuant to the *pre-incorporation agreement*, Kasper purchased 50,000 shares of AEC stock for $1.00 per share and Radobenko purchased 12,500 shares for the same price. Paragraph 7(a) of the pre-incorporation agreement contained a stock repurchase option permitting Kasper to repurchase Radobenko's

stock in AEC under certain conditions. It provided that:

"The option shall be exercisable by notice to you on or after April 1, 1972, and before April 1, 1974. The price shall be an amount equal to eight (8) times the amount of pre-tax earnings per share of AEC, for the two preceding fiscal half-years, computed in accordance with generally accepted accounting principles, and including the actual or pro-rated costs expended for services performed on behalf of AEC products or interests by Kasper, pro-rated reasonably with due consideration to the fiduciary duty of Kasper and of AEC's officers and directors em-

By October of 1972, over three years after AEC began operation, it had never earned a profit. Kasper had advanced over $924,000 to AEC and increased its capital investment in AEC from an initial $50,000 to $160,000; during the same period Radobenko increased his capital investment from an initial $12,500 to $40,000. Simply stated, substantial money had been poured into AEC and the business had been a failure. In late June of 1972, Robert. C. Johnson, President of AEC, began discussing with Radobenko alternatives to the failing business.

The foregoing facts are clearly not in dispute. Except as appellee sought by affidavit to modify his prior sworn deposition testimony, the following facts are undisputed.

As part of the solution to the failing business situation, an offer of employment with Kasper was made to Radobenko and he agreed to go on a leave of absence with pay in order to think out his decision on the new employment offer.[2] Then, in early August 1972, while Radobenko was still considering the new employment offer, Johnson told him that Kasper was going to exercise its option to repurchase his AEC stock, and because nothing had been earned by the

AEC stock, Radobenko was informed that, in accordance with the terms of the contract, he would receive nothing for his stock.

On September 1, 1972, Radobenko requested of AEC a special board meeting in order to resolve his problems regarding employment and Kasper's exercise of its stock repurchase option. A board meeting was held on September 19, 1972, which resulted in no decisive action. Immediately after the meeting, Radobenko was taken off leave of absence status and offered continued employment with AEC. Radobenko decided to stay on a leave of absence. On October 9, 1972, Kasper sent Radobenko written notice of intent to exercise its option to repurchase his AEC stock.[3] On October 18, 1972, another board meeting was held,. and although he was sent notice of the meeting, Radobenko did not attend. As a result of that meeting, Radobenko was notified that since he was unwilling to come to work, AEC would no longer make salary payments.

Appellees moved for summary judgment as to all claims alleged in Radobenko's First Amended Complaint.[4] The District Court, by its order and judgment, found that there was "no genuine issue as to any material fact and that

---

ployed by, formerly employed by or otherwise interested in Kasper."

Under the *guaranty agreement* Kasper guaranteed a bank loan of $40,000 to Radobenko which was used to finance his initial and subsequent purchases of stock in AEC. As security for Radobenko's repayment of the loan to the bank, Kasper was given a security interest in Radobenko's AEC stock.

The *employment agreement* provided Radobenko with an annual salary of not less than $24,000 for five years. Under the agreement Radobenko was to be employed "in such capacity as the Board of Directors shall determine, initially Vice-President and General Manager" and could be terminated by AEC only for "gross or wilful neglect of duty." It was agreed that all data, information and know-how developed or acquired by Radobenko during his employment with AEC was the sole property of AEC.

2. On August 7, 1972, Robert C. Johnson, President of AEC and a board member of Kasper, orally offered Radobenko a new contract. Its terms were that AEC would be merged into

Kasper and that Radobenko would (1) become a Kasper employee, (2) receive $30,000 per year as salary, (3) receive a stock option for 5,000 shares of Kasper stock exercisable at a rate of 20 percent per year at a price of $15 per share, (4) be in charge of Kasper research and development facility to be located in Phoenix, and (5) that Kasper would repay the principal on Radobenko's $40,000 loan used to buy his AEC stock.

3. See the option clause [paragraph 7(a)] in note 1, supra. Also, it should be noted that in December of 1972, the lending bank demanded that Kasper, as guarantor of Radobenko's $40,000 loan, repay the loan to the bank. Having held Radobenko's stock in AEC as security for the $40,000 loan and having repaid the loan, it now appears that Kasper owns the stock under the guaranty agreement as well.

4. It should be noted that for the nine months this action was in the District Court, plaintiff Radobenko conducted no discovery.

the moving parties are entitled to a judgment as a matter of law." This appeal was taken from that order and judgment.

## II

In reviewing the grant or denial of a summary judgment motion, we apply the same test that is initially employed by the trial court under Rule 56(c), Federal Rules of Civil Procedure.[5] *Soria et al. v. Oxnard School District Board of Trustees*, 488 F.2d 579, 586 (9th Cir. 1973); *United States v. Bissett-Berman Corp.*, 481 F.2d 764, 767 (9th Cir. 1973). Applying that test, "[s]ummary judgment is 'proper only where there is no genuine issue of any material fact or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law.'" *Caplan v. Roberts*, 506 F.2d 1039, 1042 (9th Cir. 1974), quoting *Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59, 63 (9th Cir. 1973). Accordingly, we must answer two basic questions: First, is there any genuine issue as to any material fact? Second, if there is no genuine issue of fact, then, viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, is the movant entitled to prevail as a matter of law? It should be emphasized that on a motion for summary judgment the trial court does not try issues of fact; rather, examining the entire record, it first decides the limited question of whether any factual issue exists. *Soria, supra*, 488 F.2d at 586; *Bissett-Berman Corp., supra*, 481 F.2d at 767.

## III

Mere allegations, and denials, that the contract was breached, that a fraud was committed, or that some fiduciary duty was breached do not alone establish the existence of a genuine dispute of material fact. Such allegations and denials thereof merely frame the ultimate issues to be determined by applying the relevant rules of law to established facts. Thus, appellants' contention that the existence of these ultimate issues raises questions of fact which bar summary judgment is without merit. The proper test is whether, upon examination of the proofs appearing in the record, there exists a genuine dispute of material fact.

Appellants contend that conflicting parol evidence over the meaning of paragraph 7(a) of the pre-incorporation agreement creates a triable issue of fact which bars summary judgment.[6] We find no ambiguity in paragraph 7(a); hence, any conflict in the parol evidence concerning the meaning of that clause is immaterial because it is inadmissible at trial and may be disregarded in considering the motion for summary judgment. *Douglas Equipment Co., Inc. v. Hartford Accident & Indemnity Co.*, 435 F.2d 1024, 1028 (7th Cir. 1970).

Examination of the entire record discloses many pages of sworn statements by appellant Radobenko submitted in opposition to the motion for summary judgment. From the welter of conclusionary and argumentative recitals therein, we glean few probative facts. If there is any issue of fact in the proofs, it exists only because of the inconsistent statements made by Radobenko the deponent and Radobenko the affiant. Thus, we are presented with the

---

**5.** Rule 56(c), F.R.C.P., provides, in pertinent part, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law."

**6.** See footnote 1 for the full text of paragraph 7(a).

question of whether contradictory testimony of a plaintiff alone can be used by him to defeat a defendant's summary judgment motion where the only issue of fact results from the necessity of choosing between the plaintiff's two conflicting versions. Specifically, appellant contends that there are presented the following issues of fact in the proofs which are both material and relevant:

1. Plaintiff Radobenko in his deposition testified under oath that he was offered employment with Kasper; in the affidavit, later filed in opposition to defendant's motion for summary judgment, he denies that there was any such offer of employment.

2. Plaintiff Radobenko in his deposition testified that he agreed to go on a leave of absence with pay to consider the offer of new employment; his affidavit denies this.

3. Plaintiff Radobenko in his deposition testified that he "quit" the employ of AEC; in his affidavit and in other deposition testimony, he denies this.

While the facts embraced in these three recitals are both material and relevant to the issues raised by the pleadings, we reject appellants' efforts to characterize them as *genuine* issues of fact. When confronted with the question of whether a party should be allowed to create his own issue of fact by an affidavit contradicting his prior deposition testimony, the Court of Appeals for the Second Circuit held that no *genuine* issue of fact was raised. *Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969). Therein the Court noted:

> "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." 410 F.2d at 578.

 The very object of summary judgment is to separate real and genuine issues from those that are formal or pretended, so that only the former may subject the moving party to the burden of trial. *Suckow Borax Mines Consolidated, Inc. et al. v. Borax Consolidated, Limited et al.,* 185 F.2d 196, 205 (9th Cir. 1950). Here we are convinced that the issues of fact created by Radobenko are not issues which this Court could reasonably characterize as genuine; rather, they are sham issues which should not subject the defendants to the burden of a trial. Thus, we hold that the District Court properly found that there was no genuine issue as to any material fact.

## IV

 Taking the facts to be as Radobenko first admitted them in his deposition testimony and all the inferences which may be drawn therefrom in the light most favorable to appellants, we further hold that the District Court properly found appellees entitled to judgment as a matter of law.

Judgment affirmed.