David OLIN, Plaintiff,

v.

DISNEYLAND INTERNATIONAL, a California corporation, Defendant.

No. CIV 90–1328–PHX–EHC.

United States District Court, D. Arizona.

Sept. 29, 1993.

---

Robert A. Jensen, Jensen & Kelley P.A., Phoenix, AZ, for plaintiff.

John Bouma, Peter M. Wittekind, and Melinda Anne Bird, Snell & Wilmer, Phoenix, AZ, for defendant.

## ORDER

CARROLL, District Judge.

## I. BACKGROUND

The plaintiff's complaint, filed on August 29, 1990, alleges that on or about September 1, 1989 the plaintiff was injured while he was on the Pirates of the Caribbean ride at Disneyland. Specifically, the plaintiff has described the incident in the following way: "after going down the first waterfall, the boat struck another boat, causing me to hit both shins on the front of the boat." Defendant's Statement of Facts at 1–2. The plaintiff's alleged injuries include structural knee damage, reflex sympathetic dystrophy of the left knee and related problems.

In March of 1988, before the alleged incident at Disneyland took place, the plaintiff had visited Dr. Stephen Hattrup. Dr. Hattrup's records show that the plaintiff had problems with his left knee before his visit to Disneyland. Specifically, Dr. Hattrup had noted a "[p]robable medial meniscal tear, left knee." Defendant's Statement of Facts, Exhibit C at 2. According to Dr. Hattrup's notes, the plaintiff had been in a car accident six years previously and had injured his leg. Defendant's Statement of Facts, Exhibit C.

On September 22, 1989, approximately three weeks after the visit to Disneyland, the plaintiff saw Dr. John Soscia, an orthopedic surgeon. Dr. Soscia examined the plaintiff and, suspecting a medial meniscus tear in his left knee, recommended an arthroscopy. De-fendant's Statement of Facts at 2. Dr. Soscia performed two arthroscopic surgeries on the plaintiff's left knee. During the first surgery, on September 28, 1989, he found no tear of the medial meniscus. During the second surgery, on April 20, 1990, he found a small tear on the undersurface and definite cleavage on the interior surface. Defendant's Statement of Facts at 3.

Disneyland's motion for summary judgment alleges that "the undisputed medical evidence shows that this defendant did not cause the alleged injuries." Defendant's Motion at 3. The defendant argues that no genuine issue of material fact exists regarding the lack of proximate cause. In support of this contention, the defendant relies largely on its deposition of Dr. Soscia, taken on March 5, 1993. Defendant's Statement of Facts, Exhibit B. The defendant emphasizes the following points made by Dr. Soscia during this deposition.

1. The minor structural damage to the plaintiff's left knee (the tear in the medial meniscus cartilage) probably occurred between the first surgery, conducted in September of 1989 (several weeks after the plaintiff's visit to Disneyland), and the second surgery in 1990 and therefore was probably not caused by the alleged incident at Disneyland. Defendant's Statement of Facts, Exhibit B at 11–12.

2. The precipitating event that was likely to have caused plaintiff's reflex sympathetic dystrophy was probably the first arthroscopy, performed on September 28, 1989. Defendant's Statement of Facts, Exhibit B at 28.

3. The blow to the shin that the plaintiff allegedly experienced at Disneyland is not the type of event that usually causes a tear to the medial meniscus. Such a tear usually is caused by some rotation of either the thigh or calf that would cause twisting in the knee. An event such as the car accident the plaintiff had been involved in is the type of event more likely to cause a tear of the medial meniscus. Defendant's Statement of Facts, Exhibit B at 32.

4. Finally, Dr. Soscia testified that the problems he found during the first arthrosco-

py on the plaintiff were probably not the result of the blow to the plaintiff's shin at Disneyland:

> Q. Given the fact that the way he described his injury at Disneyland with the hit to the front of his shin with no report of twisting, would you agree that the small tear of the medial meniscus that you discovered in the second arthroscopy on April 20, 1990, was, to a reasonable degree of medical probability, not the result of what happened on the ride at Disneyland?
>
> A. Sure.

Defendant's Statement of Facts, Exhibit B at 40.

In his response to the defendant's motion for summary judgment, the plaintiff argued that the circumstances surrounding the injury to the plaintiff's left knee and Dr. Soscia's opinion regarding the injury created a jury issue as to the role the Disneyland injury played directly or indirectly in his present condition. Plaintiff's Response at 5. In support of this contention, the plaintiff offered an affidavit signed by Dr. Soscia on May 26, 1993. The affidavit made the following points.

1. Upon reflection and a more careful reading of the deposition transcript and the plaintiff's medical records, he could not state to a reasonable degree of medical certainty "that the damage to the medial meniscus of David Olin's left knee occurred between the first surgery ... and the second surgery. The answers in my deposition need to be corrected accordingly." Plaintiff's Response, Exhibit B at 2.

2. Knee injuries such as those displayed by the plaintiff "are frequently a process over time and ... to a reasonable degree of medical probability, David Olin's present knee problems result from the accident at Disneyland on September 2, 1989 either by direct injury or as a catalyst to a pre-existing condition." Id.

3. The blow to David Olin's knee caused the necessity for the first arthroscopic surgery. Id.

4. The symptoms from the accident continued to progress and led to the reflex sym-

pathetic dystrophy from which the plaintiff presently suffers. Id.

5. "[T]o the extent my deposition answers conflict with any of the foregoing, my answers therein should be amended to reflect what I have stated in this affidavit." Id. at 2–3.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate only if, after viewing the evidence in the light most favorable to the party opposing the motion, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

On the other hand, summary judgment is not appropriate where the trial judge would be required to choose among competing or conflicting inferences or to pass on the credibility of witnesses with differing versions of material facts. Orme School v. Reeves, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Essentially, the Court must determine whether the evidence presented reveals a factual disagreement requiring submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Id.

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. But the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On the other hand, the party opposing the summary judgment may not rest on conclusory allegations, but must set forth, by affidavits, depositions, answers to interrogatories and admissions on file, facts showing there is a genuine issue of material fact. Id. at 324, 106 S.Ct. at 2553.

In this case, the defendant argues that summary judgement is appropriate because Dr. Soscia's deposition testimony proves that there is no issue of material fact as to the lack of proximate cause. The defendant further contends that the law in the Ninth Circuit precludes the plaintiff from offering Dr. Soscia's affidavit, which contradicts his previous deposition testimony, to raise a factual question and thereby avoid summary judgement. Defendant's Reply at 5. Therefore, defendant argues, this plaintiff has not demonstrated that there is a genuine issue for trial.

### B. Sufficiency of Dr. Soscia's Affidavit to Defeat Summary Judgment

In support of its motion for summary judgment, the defendant refers to a line of Ninth Circuit cases establishing that a party cannot create a genuine issue of material fact, thereby defeating summary judgment, merely by presenting an affidavit contradicting his prior sworn testimony.

In *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir.1975), the district court granted defendant's motion for summary judgement in a breach of contract action and the Ninth Circuit affirmed. The plaintiff had offered a number of his own sworn statements in support of his opposition to the motion for summary judgment. These statements contradicted his earlier sworn deposition testimony. The Ninth Circuit found that the only material issues of fact were created by the contradictions between the plaintiff's deposition and his subsequent affidavits. *Id.* at 543–544. The plaintiff could not use his contradictory testimony to defeat a motion for summary judgment "where the only issue of fact results from the necessity of choosing between the plaintiff's two competing versions." *Id.* at 544. *See also Foster v. Arcata Associates, Inc.* 772 F.2d 1453, 1462 (9th Cir.1985) (court would consider only deposition testimony when subsequent affidavit was contradictory).

In *Garnac Grain Co. v. Blackley*, 932 F.2d 1563, 1568 (8th Cir.1991), the Eighth Circuit applied the *Radobenko* analysis to the contradicting affidavit and deposition testimony of a nonparty witness.

Recently, however, the Ninth Circuit has reexamined the *Radobenko* analysis. In *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262 (9th Cir.1991), the issue was whether a pension benefits plan qualified as a "plan" under ERISA. If the only beneficiaries were the company's owners, the plan would not qualify. In a deposition, one owner stated that he and his co-owner were the sole participants; in a later affidavit, he contended that he had erred in his testimony and that another employee was a vested participant. The district court would not consider the affidavit and granted summary judgment for the defendants based on the deposition testimony.

The Ninth Circuit reversed and reexamined the *Radobenko* case.

> We conclude that the *Foster–Radobenko* rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony. Rather, the *Radobenko* court was concerned with 'sham' testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment. Therefore, before applying the *Radobenko* sanction, the district court must make a factual determination that the contradiction was actually a 'sham.'

*Id.* 952 F.2d at 266–267. The court further noted that a number of other circuits have "urged caution" in applying the *Radobenko* rule. *Id.* 952 F.2d at 266. *See, e.g., Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir.1980) ("In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition"); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1366 (8th Cir.1983); *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986).

*Kennedy* and the other cases suggest that a district court must look more closely at the contradiction between the affidavit and the deposition. If the affidavit is not merely a flat contradiction of the deposition, but

rather points out that genuine issues of fact remain, summary judgment may be inappropriate.

 In this case, the *Kennedy* analysis would suggest that the affidavit should not be disregarded. Because Dr. Soscia's deposition testimony was often ambiguous and because the affidavit addresses specific areas as to which the deposition was unclear, this court cannot conclude that the affidavit is merely "sham" and was given only to avoid summary judgment. Rather, the deposition and the affidavit together suggest that there remains a genuine issue of material fact as to whether the plaintiff's present condition was proximately caused by an injury he suffered at Disneyland.

Dr. Soscia's affidavit does not necessarily flatly contradict his earlier deposition testimony. In a number of places, the deposition testimony is inherently unclear and contradictory. For example, in paragraph 4 of his affidavit, Dr. Soscia states that he "cannot state to a degree of medical certainty that the damage to the medial meniscus of David Olin's left knee occurred between the first surgery ... and the second surgery." In his deposition testimony as well, Dr. Soscia admitted the possibility that the medial meniscus tear might have existed prior to the first surgery; because it was minute, the plaintiff might not have noticed the tear. Defendant's Supplemental Statement of Facts, Exhibit D at 11–12.

Further, there are suggestions in the deposition testimony that, as he later stated in his affidavit, Dr. Soscia believed that the accident at Disneyland may have aggravated the condition of the plaintiff's knee. For example: "I'm assuming the symptoms that he had that continued on were from the accident that he had at Disneyland." *Id.*

Although at one point in his deposition Dr. Soscia stated that the arthroscopy may have been the precipitating factor that caused plaintiff's reflex sympathetic dystrophy, at a later point, his opinion appears to be less clear: "Probably the precipitating event that *at least unmasked the symptoms* was the arthroscopy." Defendant's Statement of Facts, Exhibit B at 30 (emphasis added).

Under the *Kennedy* analysis, it is proper for the Court to consider Dr. Soscia's affidavit in determining whether summary judgment is appropriate. In light of the affidavit, the Court finds that material questions remain regarding the issue of proximate cause. Accordingly,

**IT IS ORDERED** denying defendant's Motion for Summary Judgment.

**IT IS FURTHER ORDERED** that the trial date of October 15, 1993 is vacated. The new trial date will be set at the pretrial conference.

**IT IS FURTHER ORDERED** that a pretrial conference is scheduled for Monday, October 18, 1993 at 9:30 a.m.