Ernest D. HOBBS, II Plaintiff

v.

## THE STROH BREWERY COMPANY Defendant

### No. CIV.A. 399CV715WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 28, 2001.

---

Davey L. Tucker, Tracey Leigh Tucker, Davey L. Tucker, Attorney, Jackson, for Ernest D. Hobbs, II, plaintiffs.

Jeffrey A. Walker, Vangela M. Wade, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, David H. Oermann, Butzel Long, Bloomfield Hills, MI, for Stroh Brewery Company, Administrator for the Stroh Brewery Company, defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

This case is before the court on a Motion for Summary Judgment filed by defendant, The Stroh Brewery Company ("Stroh") pursuant to Rule 56(b), Federal Rules of Civil Procedure.[1] Stroh also has filed a Motion to Strike certain affidavits submitted in response to the Motion for Summary Judgment. Plaintiff opposes both motions. Nevertheless, after having studied the pleadings and having heard the arguments of counsel for both parties, this court is persuaded to grant both motions.

1. Rule 56(b), Federal Rules of Civil Procedure, provides:
 (b) **For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. When Stroh ceased operations as a producer of malt beverage products and sold its brands to Pabst Brewing Company and Miller Brewing Company, the name of the company was changed to SBC Holdings, Inc.

## Findings of Fact

Ernest D. Hobbs, II ("Hobbs"), plaintiff herein, commenced this civil action on September 1, 1999, in state court, namely the Circuit Court of the First Judicial District of Hinds County, Mississippi. Stroh removed the case to this court on October 13, 1999.

Hobbs, a former employee of The Stroh Brewery Company, now known as SBC Holdings, Inc., ("SBC"),[2] claims that he was due, but was not paid, severance "benefits" under the Company's "Severance Pay Plan," (hereinafter referred to as the "Plan"). Initially, Hobbs asserted causes of action for breach of contract and fiduciary relationship, bad faith, fraud, and gross negligence, and sought, in addition to contract damages, damages for emotional distress and punitive damages. On April 3, 2001, Hobbs filed a Motion for Leave of Court to File a "2nd Amended Complaint" withdrawing (i) the state law claims, (ii) Joseph J. Franzem as a party defendant, (iii) the request for a jury trial, and (iv) to proceed on the causes of action for Breach of the Severance Plan. On April 9, 2001, the court entered an Agreed Order Granting Plaintiff Leave of Court to File a "2nd Amended Complaint."

Hobbs' claims are governed by the Employee Retirement Income Security Act, Title 29 U.S.C. § 1001 et seq., (ERISA).[3] No party disputes this fact.

3. ERISA applies to:
 any employee benefit plan if it is established or maintained-
 (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
 (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
 (c) both.
 Title 29 U.S.C. § 1003. An employee welfare benefit plan, which is considered an employee benefit plan under ERISA, is defined as:

This case arises from an agreement on April 30, 1999, involving SBC and Pabst Brewing Company (hereinafter referred to as "Pabst"). SBC and Pabst agreed to close a transaction whereby Pabst would acquire certain of the Stroh brand products and certain SBC facilities. The remaining SBC brands were acquired by Miller Brewing Company and the remaining SBC breweries were closed and put up for sale. The SBC/Pabst acquisition would result in a "severance event" under the Plan for the eligible SBC employees.

According to defendant Stroh, the primary reasons for the creation of the Plan were: (i) to ensure that SBC employees were not forced to accept with a successor company/acquiring entity a position that was not the same job and at the same pay as their position at SBC; and (ii) to protect employees from periods of unemployment.

Further, under the Plan, no SBC employee was eligible to receive, and none did receive, severance pay and benefits unless the employee was terminated for one of four reasons: (a) a written agreement between employee and the company; (b) a reduction in workforce; (c) an elimination of the employee's position; or (d) the employee's poor performance. Pursuant to the above restrictions, no SBC employee was eligible to receive, and none did receive, severance pay and benefits where the employee terminated his/her employment because the employee voluntarily resigned to take another job.

Shortly before SBC completed the transaction with Pabst, which would have resulted in Hobbs losing his job at SBC, Hobbs was offered and accepted a position with Pabst for less money than he was making at SBC. Hobbs received a letter dated April 19, 1999, from a Stroh official which included the following statements:

> We have been informed that you have accepted a verbal offer from the Pabst Brewing Company. The offer from Pabst is not for "substantially similar employment" as defined in Stroh's Amended Severance Policy. However, by accepting this offer from Pabst, you are not entitled to receive any severance pay or benefits from Stroh.
>
> Pabst will be sending you written confirmation of their offer in the near future. Assuming that you do not change your decision to join Pabst, you will become a Pabst employee on the day after the transaction is finalized. However, you will continue to be paid by Stroh and you will continue to participate in Stroh benefit programs for approximately one month, until you can be transferred to Pabst payroll system and benefit plans. Pabst will reimburse Stroh for these costs.

See SBC Motion Exhibit 5 at p. 2.

By return letter dated April 27, 1999, Hobbs responded to the same Stroh official and stated:

> As you are aware, I have accepted a job with Pabst Brewing Company. Under the current severance policy, I meet all

---

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in

the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

Title 29 U.S.C. § 1002(a).

the requirements to receive severance, except going to work for Pabst Brewing Company.

. . . . .

Due to my meeting the above criteria for severance, the extraordinary length of time and my dedicated service to the company, I respectfully request that I be given the severance package as other employees are given that are not going to work for Pabst and Miller.

See SBC Motion Exhibit 5 at p. 3.

Hobbs was never unemployed as a result of the Pabst transaction, but instead merely traded one employer, SBC, for a successor employer, Pabst.

The Plan unambiguously provides that only employees who experience a "severance event," as defined on page 3 of the Plan, are eligible for severance benefits. The Plan recites as follows:

ELIGIBLE EMPLOYEES All

full-time, part-time, and job share salaried exempt and non-exempt employees of the Company (excluding those employees described in the Section above entitled "Non–Eligible Employees") who experience a severance event as described below, and who execute a release as described above, are eligible to participate in this Plan.

SEVERANCE EVENT

An eligible employee experiences a severance event **only upon termination of his/her employment for one of the following reasons:**

(a) written agreement between the employee and a designated representative of the Company's Human Resources Department;

(b) reduction in work force;

(c) elimination of the employee's position; or

(d) the employee's poor performance.

**An employee is *not* eligible to receive severance benefits under the Plan upon termination of his/her employment for any reason other than those listed above.** For example, severance benefits will not be paid upon termination for reasons including but not limited to those listed below:

\* \* \* \* \* \*

(f) the employee voluntarily resigns.

## AMENDMENT TO SEVERANCE POLICY

The following Amendment ("Amendment") to the Stroh Brewery Company Severance Policy 119 (the "Severance Policy") is effective as of February 1, 1999 and will continue in effect in the manner provided below.

The Severance Policy is hereby amended as follows:

\* \* \* \* \* \*

(c) **"Termination"** means the involuntary termination of any covered employee's employment with the Company under the following circumstances: a Change–in–Control occurs on or prior to September 30, 1999 and (i) the covered employee's employment is involuntarily terminated without cause and in anticipation of such Change–in–Control, or (ii) within one year after the effective date of the Change–in–Control, the covered employee's employment is terminated without cause.

SBC Motion Exhibit 6 (emphasis added).

Hobbs argues that the following language from a March 23, 1999, amendment to the Plan contemplates that he was eligible for benefits, or supports his argument that the Plan is ambiguous:

3. **Exceptions to Benefits.** Anything in the Severance Policy (as hereby amended) to the contrary notwithstand-

ing, no severance payments or benefits coverage shall be available pursuant to the Severance Policy (as hereby amended) to any employee who, upon or after a Change–In–Control and, upon the termination of such employee's employment with the Company, becomes employed **or** is offered substantially similar employment by (a) The Stroh Companies, Inc. or (b) any successor to all or part of the Company's domestic brewing business. For this purpose, the term "substantially similar employment" means an employment position that (a) has substantially the same types of duties as the covered employee's position with the Company prior to the Change–In–Control, (b) has a base compensation not less than the covered employee's base compensation with the Company prior to the Change–In–Control, (c) has other employee benefits which, when taken as a whole, are substantially equal to the level of employee benefits provided to the covered employee by the Company prior to the Change–In–Control, and (d) does not require the covered employee to be based at the location more than 25 miles from the employee's principal location with the Company prior to the Change–In–Control.

See SBC Motion Exhibit 5 (emphasis added).

To accept Hobbs' position would require the court to substitute "and" for "or" in the sixth line of the above-quoted provision. There is no question but that Hobbs became employed by Pabst upon the termination of his employment with Stroh and thus was ineligible for Plan benefits. The letters Hobbs received and sent to Stroh acknowledge not only that fact but also his contemporaneous (pre-litigation) understanding that the fact of his employment with Pabst rendered him ineligible for Plan benefit. That understanding forecloses his contention that the Plan language is ambiguous.

Hobbs' offer from Pabst, which he accepted, was for less money than he was making at SBC. As such, he could have declined Pabst's offer under the terms of the Plan because it was not substantially similar to his SBC position and then, upon termination of his employment from SBC after the Pabst transaction was complete, he would have received severance pay and benefits. In other words, Hobbs announced that he would be voluntarily terminating his employment with SBC as opposed to losing his job as a result of the Pabst transaction.

No employee who accepted a position with Pabst before the transaction received severance pay and benefits under the terms of the Plan. The SBC/Pabst transaction closed on April 30, 1999, and all SBC employees were terminated on that date, with the exception of a few administrative and operations employees. The few remaining employees left during the following year as operations were wound down.

Hobbs does not dispute that the Plan itself clearly provides that the Plan Administrator has the responsibility for determining whether to accept or deny claims for severance. Similarly, Hobbs does not dispute that the Plan denied his claim for severance benefits because he accepted the Pabst offer.

## CONCLUSIONS OF LAW

### A. *Motion to Strike*

■ In response to SBC's Motion for Summary Judgment, Hobbs submitted affidavits from himself and two former SBC employees. Hobbs concedes that none of the affidavits submitted in opposition to the Motion for Summary Judgment was submitted to the Plan Administrator during the review process. For this reason, the court finds that the Motion to Strike the affidavits is well taken and should be

granted. *E.g., Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (*en banc*).

## B. *Motion for Summary Judgment*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir.1996) (quoting Fed. R.Civ.P. 56(c)). In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Rather, "it is the province of the jury to access the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). "Summary judgment can be granted only if everything in the record demonstrates that no genuine issues of material facts exist." *Id.* It is improper where the court merely believes it is unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962). However, the facts that are irrelevant or unnecessary to a decision are "non-material" and do not prevent summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265 (5th Cir.1987).

Summary judgment is mandated in any case where a party fails to establish the existence of an element essential to the case and on which the party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, Rule 56(c) further requires that the court enter summary judgment if the evidence favoring the non-moving party is not sufficient for the trier of fact to enter a verdict in the non-moving party's favor. See *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1297 (5th Cir.1993).

When the moving party has challenged the non-movant's case under Rule 56(c), the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In response to a motion for summary judgment, the non-moving party is required to respond with specific proof demonstrating a triable issue of fact as to each of the elements required for establishment of the claim or claims asserted. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122–23 (5th Cir.1988).

Hobbs has brought suit under ERISA seeking to recover benefits under the Plan. As this court previously ruled in this case, in response to Hobbs' Motion to Remand, ERISA precludes all of Hobbs' common law claims for breach of contract and breach of fiduciary duty in Count I; bad faith and fraud in Count II; and gross negligence in Count III. See SBC Motion Exhibit 1; Order dated 8/8/00, pp. 7–8.

 Moreover, while ERISA does provide for a breach of fiduciary duty claim in some instances, it is not available to Hobbs in this case where his claim for ERISA benefits, albeit improperly pled, provides him with a remedy. ERISA law precluding such a claim could not be clearer.

In *Varity*, the Supreme Court observed that an ERISA plaintiff may bring a private action for breach of fiduciary duty only when no other remedy is available under 29 U.S.C. § 1132. *Varity*, 116 S.Ct. at 1077–79; *Tolson v. Avon-*

*dale Indus., Inc.,* 141 F.3d 604, 610 (5th Cir.1998). Here, in addition to seeking damages on her claim for breach of fiduciary duty, Rhorer is seeking to recover plan benefits under § 1132(a)(1)(B). Indeed, it is readily apparent from Rhorer's complaint that her claim to recover plan benefits is the predominate cause of action in this suit. Accordingly, because § 1132(a)(1)(B) affords Rhorer an avenue for legal redress, she may not simultaneously maintain her claim for breach of fiduciary duty.

*Rhorer v. Raytheon Engineers & Constructors, Inc.,* 181 F.3d 634, 639 (5th Cir. 1999). *See also Tolson v. Avondale Indus., Inc.,* 141 F.3d 604, 610 (5th Cir.1998). ("Because Tolson has adequate redress for disavowed claims through his right to bring suit pursuant to section 1132(a)(1), he has no claim for breach of fiduciary duty under section 1132(a)(3).").

■■■ As Hobbs admits in his pleading, there is no question that the Plan is governed by ERISA. Moreover, there is no question that the Plan vests sole discretionary authority to the Plan Administrator to control and manage the administration of the Plan.

A plan administrator's interpretation or application of the plan, including a denial of plan benefits challenged under § 1132(a)(1)(B), is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). Many plans, like the Entergy plan at issue here, vest plan administrators with broad discretion to interpret and apply to the plan. In such cases, the "administrator's interpretation of the plan and action based thereon" is reversed only for "an abuse of discretion." *Spacek v. Maritime Ass'n,* 134 F.3d 283, 292 (5th Cir.1998) (citing *Bruch,* 109 S.Ct. at 956). The abuse of discretion standard applicable here is sometimes referred to or equated with an **"arbitrary and capricious"** standard of review. *See Matassarin v. Lynch,* 174 F.3d 549, 563 (5th Cir.1999), *cert. denied,* 528 U.S. 1116, 120 S.Ct. 934, 145 L.Ed.2d 813 (2000); *Penn v. Howe–Baker Eng'rs,* 898 F.2d 1096, 1100 & n. 2a (5th Cir.1990).

*Aboul–Fetouh v. Employee Benefits Committee,* 245 F.3d 465, 471–72 (5th Cir.2001) (emphasis added). The required analysis under ERISA is whether the Administrator's determination that Hobbs was ineligible to receive severance pay and benefits was "arbitrary and capricious."

■■■ The burden of proof Hobbs must meet in this case, coupled with the unambiguous language of the Plan regarding eligibility for severance, warrants summary judgment in favor of SBC. In *Aboul–Fetouh* and other decisions, the Fifth Circuit held:

> "[T]he abuse of discretion standard may involve a two-step process." *Spacek,* 134 F.3d at 292. First, the court determines whether the administrator's interpretation of the plan is legally correct. *Id.* at 292; *Threadgill v. Prudential Securities Group, Inc.,* 145 F.3d 286, 292 (5th Cir.1998). **For this analysis, plan language is preeminent.** If the court determines that the plan administrator's interpretation of the plan is legally correct, then the administrator's interpretation and the denial of benefits should be upheld because there cannot have been any abuse of discretion. *See Spacek,* 134 F.3d at 292.

*Aboul–Fetouh,* 245 F.3d at 472 (emphasis added).

The court must initially determine whether the administrator's interpretation of the plan is the legally correct

interpretation. *See Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637 (5th Cir.), *modified*, 979 F.2d 1013 (5th Cir. 1992). If the administrator's interpretation of the plan is legally correct, then the inquiry ends because no abuse of discretion could have occurred. However, if the court determines that the administrator's interpretation is not legally correct, then it must further determine whether the administrator's decision was an abuse of discretion.

*Spacek v. The Maritime Ass'n, I LA Pension Plan*, 134 F.3d 283, 293 (5th Cir. 1998).

SBC's Plan Administrator's decision to deny severance was plainly rational in light of the Plan's unambiguous provisions. Since there are no disputed facts concerning SBC's denial of Hobbs' claim for severance pay and benefits and the Plan language is unambiguous, SBC's Plan Administrator's interpretation of the Plan is "legally correct."

Even if the Plan language was not clear and unambiguous, the SBC Plan Administrator did not abuse his discretion in denying Hobbs' claim for severance. Since the purpose of the Plan is to provide a bridge for employees between jobs, it would be inconsistent with the purposes of the Plan to allow employees to "double dip" as Hobbs proposes to do. *E.g., Curtis v. BellSouth Corp.*, 149 F.Supp.2d 268, 272–73 (S.D.Miss.2001), Simply, Hobbs wants the best of both worlds—severance pay for leaving SBC and a new job with the entity acquiring his former employer. Whether a "better" or "fairer" severance plan should have been utilized by Stroh is not for this court to decide. This court's duty is to apply the law to the Plan that was used by Stroh.

Accordingly, the court concludes that the Motion to Strike should be granted. Further, the court concludes that the Motion for Summary Judgment should be granted. This court will enter a separate judgment in accordance with the local rules.