No. 122,928

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANITA CHRISTIANSEN,
*Appellant*,

v.

HOWARD SILVERBRAND, Individually and as Trustee of the HOWARD SILVERBRAND
LIVING TRUST, and LISA FAITH SILVERBRAND, Individually and as Trustee of the
HOWARD SILVERBRAND LIVING TRUST,
*Appellees*.

SYLLABUS BY THE COURT

1.

We review a district court's decision to strike what it deems to be a contradictory affidavit for an abuse of discretion.

2.

A party may not avoid summary judgment by presenting an affidavit that contradicts prior sworn deposition testimony. This has been called the "sham affidavit doctrine."

3.

Finding an affidavit is a sham and striking its consideration requires a two-part inquiry. First, the court determines whether a contradiction exists. Second, the court determines whether the contradiction is justified. The court must consider the contents and the context of the prior testimony.

1

4.

When a movant demonstrates the lack of facts to support an essential element of the nonmovant's claim, the nonmovant has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case.

5.

Not every discrepancy in an affidavit justifies a district court's refusal to give credence to such evidence.

6.

An affidavit submitted along with a response to a motion for summary judgment does not contradict prior testimony when offered to provide clarification or expand on a previous sworn statement.

Appeal from Barton District Court; STEVEN E. JOHNSON, judge. Opinion filed September 3, 2021. Reversed and remanded with directions.

*Melinda G. Young*, of Bretz & Young, LLC, of Hutchinson, for appellant.

*Thomas J. Berscheidt*, of Berscheidt Law Office, of Great Bend, for appellees.

Before ARNOLD-BURGER, C.J., ATCHESON and HURST, JJ.

ARNOLD-BURGER, C.J.:  The defendants in this case, Howard Silverbrand, individually and as trustee of the Howard Silverbrand Living Trust, and Lisa Faith Silverbrand, individually and as trustee of the Howard Silverbrand Living Trust (Silverbrand), moved for summary judgment in a slip and fall case brought by Anita Christiansen. Christiansen asserted that her injury was due to Silverbrand's poorly maintained parking lot. Silverbrand moved for summary judgment, asserting that Christiansen only admitted to slipping on ice in the parking lot, which was purportedly

2

not its responsibility. Along with her response in opposition to the motion, Christiansen submitted an affidavit stating that she slipped on the ice before breaking her ankle on a crack/pothole in the parking lot. The district court struck the affidavit, holding that it contradicted Christiansen's prior statements attributing her injury to slipping on the ice. The court granted the motion for summary judgment. Because we find that Christiansen's affidavit was supplementary, not contradictory, we reverse the district court's decision granting summary judgment to Silverbrand.

## FACTUAL AND PROCEDURAL HISTORY

In the winter of 2016, Christiansen was working as a mail carrier for the United States Postal Service (USPS) in Great Bend. The parking lot where her work vehicle needed to be parked was owned by Silverbrand. Silverbrand was responsible for all maintenance of the parking lot. Clearing ice from the parking lot was the responsibility of USPS.

As she exited her vehicle in the parking lot, Christiansen slipped and fell, breaking her ankle. She felt immediate and severe pain and yelled out for help, prompting a co-worker nearby to call an ambulance. Christiansen told the emergency medical technician (EMT) who arrived to treat her that she slipped on ice.

Christiansen filed a personal injury lawsuit against Silverbrand, alleging that their negligence in maintaining the parking lot was the direct and proximate cause of her injuries. In the petition, she alleged that "[her] shoe got caught in a large pothole causing her to fall to the ground" and sustain injuries.

Silverbrand ultimately moved for summary judgment. In the motion, Silverbrand generally asserted the uncontroverted facts showed that Christiansen slipped on ice in the parking lot. Because Silverbrand was not responsible for removal of ice from the parking

3

lot, Silverbrand argued that "[a]llowing this case to go forward to a jury trial will not change the facts as they currently exist. At this stage, summary judgment is warranted." Silverbrand attached several exhibits to their motion, which all contained statements by Christiansen that she either slipped or slid on the ice. In particular, she told the EMT and a treating physician she had slipped on black ice in the parking lot. In a response to Interrogatory No. 5 asking to "[p]lease describe in detail how the injury occurred," she stated, "As I stepped out of my [long-life vehicle (LLV)] after moving it forward, my right foot slid on ice and I fell down." Likewise, at a deposition, the following exchange occurred:

"Q:     Okay. The slickness was where your vehicles was parked, is that correct?
"A:     No.
"Q:     Where was it?
"A:     The slickness?
"Q:     Yeah.
"A:     The only place I experienced is when I stepped out of that LLV.
"Q:     Okay. You don't deny what you've said, you slipped on the ice when you stepped out, do you?
"A:     No.
"Q:     You don't deny that you told the ambulance attendant EMT—let's see. His name is Reifsynder. No. Yes. Pardon Me. Yes, it is Reifsynder.
              You don't deny telling the EMT attendant when he asked you what happened that you slipped on the ice, isn't that–
"A:     Do I deny it? No."

Christiansen responded to Silverbrand's motion, asserting genuine factual disputes existed about whether the "parking lot created a dangerous condition, and whether [Silverbrand] acted reasonably in maintaining, inspecting and repairing their parking lot." She also generally argued that Silverbrand was not entitled to judgment as a matter of law because the lease agreement with the USPS required them to maintain and repair the parking lot, on top of a duty of reasonable care as the owners of the parking lot.

4

According to Christiansen, she slipped on ice as she exited her vehicle but "her foot caught the inside edge of a large crack/pothole in the parking lot," which caused her ankle to snap. As support, Christiansen attached to her response an affidavit stating, in relevant part:

"8.    As I was stepping out of my vehicle, my right foot started sliding on ice.

"9.    My right foot slid a couple of feet and then my foot caught the edge of a large crack/pothole in the parking lot. Sec photo of the location of my fall attached as Ex. A.

"10.    When my shoe caught the edge of the large crack/pothole, I heard and felt a snap in my ankle and then saw a white impression under the skin where the bone had broken and was pressing against the skin as if it would pop out.

"11.    I slid due to the ice.

"12.    My ankle broke due to my foot hitting the crack/pothole in the parking lot."

The district court held a pretrial hearing in February 2020 and heard argument from counsel at the outset on the motion for summary judgment. The district court took the matter under advisement and asked the parties to submit supplemental briefs on the issue of whether the court should consider Christiansen's "self-serving" affidavit as creating a controverted fact.

Silverbrand's supplemental brief argued that Kansas Supreme Court held in *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, Syl. ¶ 1, 661 P.2d 348 (1983), that "[g]enerally a party may not defeat summary judgment by filing a subsequent affidavit impeaching his previous testimony upon deposition." Thus, Silverbrand asked the district court to sustain the motion for summary judgment because Christiansen had not submitted evidence to create an issue of fact.

Christiansen argued in her supplemental brief that *Mays* did not support striking her affidavit because the facts of the cases were "vastly different." She asserted that her

5

affidavit was not inconsistent or contrary to her prior statements because she has never denied that she slipped and fell on ice, and the affidavit "clarifies" and supports her allegation that her ankle broke as a result of hitting the crack/pothole in the parking lot. Christiansen also argued the deposition was inadequate because it only lasted 25 minutes and counsel never asked her to fully explain the facts supporting her allegations.

The district court ultimately granted Silverbrand's motion for summary judgment. The court noted Christiansen's affidavit was "the only evidence presented by the defendant to controvert the material fact in question" and that the affidavit "was at the very least [inconsistent] with prior statements that she gave to outside witnesses and to prior statements that she gave under oath." The court explained that *Mays* accurately stated the law but also mentioned more recent decisions citing *Mays* that addressed a similar issue. *Deters v. Nemaha-Marshall Electric Cooperative Ass'n*, 56 Kan. App. 2d 1170, 443 P.3d 1086 (2019); *Smith v. Kansas Orthopedic Center*, 49 Kan. App. 2d 812, 316 P.3d 790 (2013).

The district court then explained that Christiansen had two "full" opportunities to describe the cause of the accident, yet both times she clearly stated she slipped on the ice and fell, injuring her ankle. The court also found that Christiansen's affidavit "tries to change that statement entirely by indicating that the ice was involved but it was the defect in the parking lot that caused her fall and injury." As a result, the court concluded the affidavit "is not a mere inconsistency but completely changes the liability of the defendant." In conclusion, the court decided to strike the affidavit and grant the motion for summary judgment.

Christiansen timely appealed.

ANALYSIS

Christiansen argues on appeal the district court erred in granting summary judgment because genuine disputes of material fact existed to preclude judgment as a matter of law. Her argument on appeal and against summary judgment turns on the affidavit she submitted in response to Silverbrand's motion for summary judgment. In particular, the question is whether the district court erred in striking the affidavit because it only created a factual dispute by contradicting her prior sworn statements. According to Christiansen, the affidavit was not contradictory and merely clarified or supplemented her prior incomplete testimony.

*We review a district court's decision to strike an affidavit for an abuse of discretion.*

Although this appeal stems from the district court's grant of summary judgment, the issue is whether the district court erred in striking Christiansen's affidavit. We review a district court's decision to strike what it deems to be a contradictory affidavit for an abuse of discretion. *P.W.P. v. L.S.*, 266 Kan. 417, 431, 969 P.2d 896 (1998). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

*A party cannot avoid summary judgment with an affidavit that contradicts prior sworn testimony.*

As mentioned, the district court refused to consider the affidavit under the Kansas Supreme Court's longstanding rule that a party may not avoid summary judgment by presenting an affidavit that contradicts prior sworn deposition testimony. *Dawson v. Prager*, 276 Kan. 373, Syl. ¶ 4, 76 P.3d 1036 (2003) ("As a general rule, a party may not

defeat summary judgment by filing an affidavit that contradicts prior deposition testimony."); *Mays*, 233 Kan. 38, Syl. ¶ 1 (same).

This is sometimes called the "sham affidavit doctrine." See *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). "The concern in litigation . . . is that a party will first admit no knowledge of a fact but will later come up with a specific recollection that would override the earlier admission." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292-93 (7th Cir. 1996) (refusing to allow the plaintiff's offsetting affidavit to preclude summary judgment, when the plaintiff had stated during her deposition that she "did not know" what object in the defendant's store had caused her fall, then asserted in an offsetting affidavit that the object was a ladies' watch, "one of the few objects that could directly link [the defendant] with the accident").

Some argue that the sham affidavit doctrine conflicts with the court's role in summary judgment proceedings. In summary judgment, the moving party must show, based on the "pleadings, the discovery and disclosure materials on file, and any affidavits or declarations" that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law. K.S.A. 2020 Supp. 60-256(c)(2); *Montgomery v. Saleh*, 311 Kan. 649, 652, 466 P.3d 902 (2020). "The district court must resolve all facts and reasonable inferences drawn from the evidence *in favor* of the party against whom the ruling [is] sought." (Emphasis added.) *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 982, 453 P.3d 304 (2019). When a movant establishes the lack of facts to support an essential element of the nonmovant's claim, the nonmovant "'has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case.'" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 623, 345 P.3d 281 (2015).

"Summary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists." *Whitaker v. Coleman*, 115 F.2d 305, 307 (5th Cir. 1940).

See *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 612 (5th Cir. 1967) ("Summary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use.").

Even in *Perma Research*, the case that serves as the beginning of the sham affidavit doctrine, the court determined that trial judges cannot "'exclude the [offsetting] affidavit[s] from consideration in the determination of the question whether there is any genuine issue as to any material fact'" and acknowledged that "there may be some instances where summary judgment is too blunt a procedural device." 410 F.2d at 578.

Finding an affidavit is a sham and striking its consideration requires a two-part inquiry. First, the court determines whether a contradiction exists. Second, the court determines whether the contradiction is justified. The court must consider the contents and the context of the prior testimony. As a result, some courts, ours included, have been reluctant to blindly apply the sham affidavit doctrine without reviewing the contents and the context of the affidavit and the testimony in detail. They urge a more flexible approach. See *Webster v. Sill*, 675 P.2d 1170, 1173 (Utah 1983) ("The rule that a moving party may not rely upon his own affidavit which contradicts his deposition must be administered with care. It is common knowledge that witnesses sometimes misstate themselves, may not properly understand the question propounded, or give equivocal answers.").

9

*We discuss the application of the sham affidavit doctrine in Kansas.*

In reviewing the cases from our Supreme Court that have applied the sham affidavit doctrine to strike an affidavit, it becomes apparent that the affidavits submitted must flatly contradict prior testimony. There have been mainly four such Supreme Court cases since and including *Mays*, the case the district court relied on here. All found the affidavits to be contradictory and affirmed the district court's failure to consider them in ruling on a summary judgment motion. Because they are all very fact specific it is necessary to review them in detail.

*Mays*, 233 Kan. 38, involved a personal injury lawsuit brought after a gas pipeline explosion. Mays was the only eyewitness to the movement and rupture of the pipeline which caused his injuries. He testified during a deposition that the pipe broke within 5 feet either side of the steel-to-fiberglass connection. Five feet on the gas well side would be the fiberglass pipe manufactured by the Ciba-Geigy Corporation, one of the defendants in the lawsuit. But 5 feet on the separator side would be steel pipe, not manufactured by Ciba-Geighy. The defendant Doc Dale, through his company Doc's Backhoe Service, bought and installed materials that led to the explosion. He testified in his deposition about his own extensive knowledge and experience in hooking up oil and gas wells, that he did not read the package inserts related to making the bond of steel to fiberglass connections because he knew what he was doing.

Three years later—after the defendants moved for summary judgment—Mays submitted affidavits that directly contradicted this prior testimony. In particular, Mays' affidavit now stated that the pipe broke 5 feet into the fiberglass side of the connection (which would be Ciba-Geigy responsibility) and Dale's affidavit stated he would have performed all the steps properly and the explosion could have been avoided if he had been adequately instructed by the defendants. The trial court struck these affidavits as contradictory. On appeal, our Supreme Court concluded that the affidavits were in direct

10

response to the filing of the summary judgment motions and were intended to contradict the prior depositions in order to defeat summary judgment. 233 Kan. at 46-47.

In *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 756 P.2d 416 (1988), the court faced expert testimony about the cause of a newborn's post-birth oxygen deprivation which the Bacons claimed in their medical malpractice action caused the baby's cerebral palsy. There had also been pre-birth oxygen deprivation when the cord was found wrapped around the baby's neck. Causation was the main issue in the case. The Bacons had two causation experts, Dr. Judith Wood and Dr. Buck. It was undisputed that the presentation of the case turned on the testimony of experts. During Dr. Buck's deposition, he stated that it would require a pediatric neurologist to determine the actual cause of the baby's cerebral palsy and he was simply an obstetrician. Dr. Wood testified that she had never attended a child with cerebral palsy, had never been asked to diagnose it, and was not an expert in its etiology. She could not state within a reasonable degree of probability that the care and treatment of the defendant doctor caused cerebral palsy in the child.

After the district court granted summary judgment for the defendants for failure to establish causation, the Bacons moved to alter or amend the judgment. This time, the Bacons presented affidavits from both doctors. Dr. Buck's affidavit swore he believed that the lack of oxygen after delivery caused the newborn's cerebral palsy. Dr. Wood's affidavit swore that the stress inflicted on the baby after birth increased the severity of her cerebral palsy. The court refused to consider the affidavits and the Bacons appealed. The Supreme Court found the district court's decision was correct because a party may not remain silent in the face of a motion for summary judgment and later claim there is more evidence to support its claims. It then cited *Mays* for the proposition that an affidavit cannot be used to controvert a prior sworn statement in order to create an issue of material fact and defeat a motion for summary judgment. 243 Kan. at 314.

11

*P.W.P.*, 266 Kan. 417, involved a patient who sued her therapist and the Johnson County Mental Health Center claiming that the therapist negligently entered into a sexual relationship with her beginning in 1985 that caused her substantial emotional damage. The case ended up being dismissed on the statute of limitations. The issue was when P.W.P. could have first reasonably learned about her injury to begin the statute of limitations clock. She testified in her deposition that she knew of her cause of action and her injury by 1985 and 1986 based on deposition testimony and letters she had written. She did not sue until 1995, well beyond the two-year statute of limitations. See K.S.A. 60-513(a)(4), (7). But in response to the defendants' motion for summary judgment, P.W.P. submitted an affidavit that, contrary to her testimony, for the first time claimed that because of flashbacks she experienced she may not have written the letters until 1993 or 1994. The Supreme Court affirmed the district court's decision to disregard the affidavit citing both *Bacon* and *Mays* and the doctrine that "'[a]n affidavit cannot be used to controvert a prior sworn statement in order to create an issue of material fact and defeat a motion for summary judgment.'" 266 Kan. at 431. We note that her petition alleged the harm began in 1985 as well.

In *Dawson*, 276 Kan. 373, a patient sued a resident psychiatrist at the Menninger Clinic, Dr. Sandra Prager, alleging negligence and other wrongs in her psychiatric care. She also claimed that Menninger failed to adequately supervise Dr. Prager. Dawson designated an expert witness, Dr. Robert Simon. The applicable statute requires that a person cannot be qualified as an expert unless the expert has devoted at least 50% of such person's professional time within the previous two years to the actual clinical practice in the same profession which the defendant is licensed. K.S.A. 60-3412. Dr. Simon testified in his deposition that he spent less than half his time in actual clinical practice. When Prager moved for summary judgment because Dawson's only expert witness was not qualified and thus Dawson could not prove deviation from the standard of care, Dawson filed an affidavit from Dr. Simon stating, in contradiction to his extensive deposition testimony, that his clinical practice for the preceding two years exceeded 50%. He then

sought to explain the discrepancy by arguing that his testimony during his deposition was only in response to the time he spent in clinical practice as defined by defense counsel. But as the court analyzed the new information in the affidavit it determined that the estimations in his affidavit only amounted to another quarter of an hour a week, which did not put him over the 50% minimum. So even if the court considered the affidavit, it still did not support his 50% claim. Our Supreme Court affirmed the striking of the affidavit and the issuance of summary judgment for Prager. 276 Kan. at 385-86.

As cited by the district court here, our court has also recognized the sham affidavit doctrine, although we did not identify it as such.

Lana Smith, an at-will employee, had a dispute with the medical practice she worked for over whether they promised her a $10,000 bonus. The primary issue in the case was whether the bonus was just for the first year of Smith's employment or for later years as well. *Smith*, 49 Kan. App. 2d 812. In her deposition testimony, Smith said that she recalled no one telling her that the bonus was limited to her first year of employment. The medical practice presented testimony from its business manager, Liz Tolberd, that she told Smith the bonus was limited to the first year. In response to a motion for summary judgment, Smith filed an affidavit contending that Tolberd falsely stated that "I agreed to 'a bonus guarantee of $10,000 for *the first year*.'" 49 Kan. App. 2d at 818-19. The district court refused to consider the affidavit, in essence relying on the sham affidavit doctrine. We affirmed holding that "[t]o go from saying that she didn't recall Tolberd limiting the bonus guarantee to the first year, to saying that Tolberd had testified falsely was more than a subtle shift, and the new position came only in response to a summary-judgment motion." 49 Kan. App. 2d at 819. We noted all Smith had was a subjective expectation that her bonus would continue and under the facts that was not enough to avoid summary judgment. 49 Kan. App. 2d at 819.

13

Likewise, the plaintiffs' claims in *Deters*, 56 Kan. App. 2d 1170, were dismissed on summary judgment. The Deters' underlying claim was whether the negligence of the electric company in negligently wiring their generator causing the failure of their heat pumps. But the decision rested on whether the statute of repose had expired, defeating the Deters' claim. Stephen Deters testified in his deposition that electric company workers were at his home in the mid-2000s to address blinking lights, but he had no memory of a service call to his house when the electric company employees would have worked on his generator (the devise that he claims malfunctioned to cause his heat pumps to fail). The electric company claimed it last worked on the generator in 1997, more than 15 years before the Deters' lawsuit was filed in 2015. But in his affidavit in response to the electric company's summary judgment motion, Stephen claimed that he watched electric company employees work on the generator in 2007 and that they checked the connections in 2007, which he *understood to mean* they worked on the generator. We affirmed the district court's grant of summary judgment finding that Stephen's affidavit was not only self-serving and contradictory to his prior testimony, but was conclusory, flimsy, transparent, and was based on an inference or speculation. 56 Kan. App. 2d at 1185. So the fact that the affidavit was more than just contradictory provides limited support for the district court to rely on it for any rule regarding sham affidavits applicable rule in this case.

Each case represents affidavits that contradicted the plaintiffs' initial claims and testimony. But this does not mean that the court will automatically classify every affidavit presented that varies at all from deposition testimony a sham affidavit and exclude it from consideration. Our court, as well as others, have recognized that the court can consider an affidavit if the litigant did not submit it to create a dispute of fact but merely supplements, clarifies, or amplifies prior testimony.

14

Even in *Mays*, our Supreme Court recognized that a court is not required to strike all affidavits that vary from deposition testimony by citing—but distinguishing—*Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir. 1980). *Mays*, 233 Kan. at 45.

In *Kennett-Murray*, an employer sued a former employee to recover on a promissory note and an employment contract. One of the main issues was whether Kennett-Murray personnel had made fraudulent representations to induce Bone into signing a new employment contract when his prior contract expired. During his deposition Bone admitted that he never read the contract because he thought it was the same as his prior contract. At one point he testified that the Kennett-Murray employee who asked him to sign the new contract said nothing about the promissory note the company claimed was due or the new contract, thus negating any potential claims for fraudulent misrepresentation. But Bone later testified that he was led to believe it was the same contract because the employee said it was and he was led to believe certain things about the carryover of the promissory note. In response to Kennett-Murray's summary judgment motion, Bone submitted an affidavit that said the Kennett-Murray employee told him "'something to the effect that this contract would serve to renew my first contract and that they were just alike or that they were the same contract.'" 622 F.2d at 891.

The Fifth Circuit reversed the district court's decision striking the affidavit as inconsistent with his deposition testimony. The court recognized first that the defendant's answer to the petition alleged that personnel at Kennett-Murray told him that the money represented by his promissory note "'would go back into the Linden operation'" and not be Bone's obligation. He also asserted that this representation was false and material. 622 F.2d at 890-91. As for to the employment contract, he alleged in his answer that Kennett-Murray personnel advised him that it was the same as his earlier agreement. So even though he did not read it Kennett-Murray induced him by this false and material representation.

15

Moreover, although the Fifth Circuit recognized the sham affidavit doctrine set out in *Perma Research*, it held that not every discrepancy in an affidavit justifies a district court's refusal to give credence to such evidence. "Bone's affidavit did not purport to raise a new matter, but rather to explain certain aspects of his deposition testimony." *Kennett-Murray*, 622 F.2d at 894. It found Bone's assertion plausible and not inherently inconsistent. The court noted that in context, Bone's statement in his deposition could not be taken literally. It also noted that Bone's affidavit did not undermine his general theory of defense, nor was it a reformulation of it. 622 F.2d at 894-95. "While some statements in Bone's deposition differ with those in his affidavit, these conflicts present questions of credibility which require jury resolution." 622 F.2d at 895.

This court has recognized the same limits to the sham affidavit doctrine as *Kennett-Murray*.

A legal malpractice claim was at issue in *Zimmerman v. Brown*, 49 Kan. App. 2d 143, 306 P.3d 306 (2013). Daniel and Sara Zimmerman brought a claim against their attorney, Richard Brown, related to the sale of their business to him. There was a concern that by selling the business and buying a competing business the Zimmermans would violate a noncompete agreement. Brown was also involved in the Zimmermans' business and likewise wanted to buy into the new business, and likewise feared the ramifications on his income from the old business as a result of a noncompete agreement. So he recommended the Zimmermans sell the business to him to avoid detection. Eventually the whole sham unraveled, Brown stopped paying the Zimmermans as they had agreed and the Zimmermans sued. Although the facts are significantly more complicated than that, for our purposes it is safe to conclude that Brown argued he was not responsible for legal malpractice based on his defense of *in pari delicto*—the principle that a plaintiff who participated in equal wrongdoing with the defendant may not recover damages from the defendant resulting from the wrongdoing. 49 Kan. App. 2d at 150. Brown argued that this was a complete defense and entitled him to summary judgment. But the Zimmermans

16

contended in an affidavit in opposition to summary judgment that they never believed they were doing anything morally or ethically wrong when they sold their business "on paper only" to Brown. 49 Kan. App. 2d at 152-53. Brown argued that in Daniel's deposition he admitted his involvement in this scheme. So the court should strike any affidavit to the contrary as a sham affidavit. The district court granted summary judgment necessarily disregarding the Zimmermans' affidavit.

Our court, citing *Mays* and *Bacon* reversed the district court and held that Daniel's statements were "not the sort of contradictory sworn statements that Kansas courts have held insufficient to avoid summary judgment." 49 Kan. App. 2d at 153. In finding that this was not sham testimony the court held that there was no contradiction between a claim that they were trying to avoid detection by their existing business to avoid being charged with violation of the noncompete agreement and a belief—based on the advice of their attorney—that they were in fact violating the agreement. They were avoiding detection to avoid disputes, not conceding they were in violation. 49 Kan. App. 2d at 153-54.

In *Bird v. Kansas Dept. of Transportation*, 23 Kan. App. 2d 164, 928 P.2d 915 (1996), the court faced a summary judgment motion in a wrongful death case. Judy Bird was killed in a one-vehicle collision with a guardrail. The Kansas Department of Transportation (KDOT) argued it was immune from prosecution under the Kansas Tort Claims Act. KDOT argued that no prevailing engineering standards existed for designing and installing guardrails when it installed this particular guardrail. Without those standards, their design and installation were a discretionary function and KDOT was immune from liability.

The Birds submitted several affidavits in response to KDOT's motion for summary judgment. Those included portions of expert witness depositions establishing that even under 1972 standards guardrails had to be a certain height. The guardrails here were

17

above the height allowing them to penetrate the passenger compartment of the car. They also presented depositions from a KDOT official regarding department policy to install rumble strips on the shoulder, which were not present in this case. But the district court disregarded the affidavits finding that they "'controvert, contradict, add to, and attempt to further explain'" the deposition testimony of the expert witnesses and granted summary judgment. 23 Kan. App. 2d at 169. This court reversed, finding that the Birds' affidavits did not "show such contradictions or inconsistencies as would warrant disregarding the affidavits" under *Mays* and *Bacon*. 23 Kan. App. 2d at 169. The opinion does not set out the exact way the depositions were contradictory. But again, our court recognized that the application of *Mays* and *Bacon* are not automatic and are fact and context dependent.

Two individuals involuntarily committed to the Kansas Sexually Violent Predator Treatment Program brought a civil rights action against the Secretary of Kansas Social and Rehabilitation Services in *Brull v. Jordan*, No. 101,755, 2011 WL 420700 (Kan. App. 2011) (unpublished opinion). As here, the question in the case was whether the district court properly granted a summary judgment motion, but the panel also briefly discussed whether affidavits submitted by the plaintiffs were so-called "sham affidavits" that could not be used to avoid summary judgment. 2011 WL 420700, at *8. Relying in part on *Mays*, the panel concluded that the plaintiffs' prior responses to interrogatories "merely summarized the alleged violations [and] did not purport to provide every fact that might be relevant." 2011 WL 420700, at *8. Thus, even though the affidavits provided more specific information, the panel "[found] nothing in the affidavits that so conflicts with a prior response that the affidavits should be considered sham affidavits for summary-judgment purposes." 2011 WL 420700, at *8. We are at a bit of a loss because the opinion does not specifically explain how the affidavits varied from the answers to interrogatories, but the case recognizes that the supplementing or amplifying of prior answers does not necessarily a sham affidavit make.

18

And finally, in *K.F.B. Ins. Co. v. Caswell*, No. 62,155, unpublished opinion filed April 14, 1989 (Kan. App.), the defendant made a sworn statement to the insurance company that he was acting outside the scope of his employment when the fatal collision which was the subject of the litigation occurred. Later, after the insurance company moved for summary judgment, the defendant submitted an affidavit recanting that prior statement. The trial court ruled that the plaintiff's motion for summary judgment could not be supported by a statement made before litigation and considered the affidavit. The panel agreed that the district court could consider the affidavit since the defendant did not submit the affidavit to create a dispute of fact or defeat summary judgment, but because his answer to the initial petition placed permissive use of the vehicle in dispute.

Christiansen also relies on at least six cases from outside of the Kansas appellate system. We will not discuss each of them, but they do support Christiansen's position that affidavits can clarify or amplify facts and courts should not consider them sham affidavits. See *Pambianchi v. Arkansas Tech. Univ.*, 95 F. Supp. 3d 1101, 1113-14 (E.D. Ark. 2015) (affidavit can generate an issue of fact if it does not propose to raise a new matter, but rather to explain certain aspects of previous testimony or if confusion contributed to the inconsistency); *In re Independent Service Organizations Antitrust Litigation*, 85 F. Supp. 2d 1130, 1156-57 (D. Kan. 2000) (finding that the expert's declaration was not contradictory and "[a]t best" reflected "speculation" on the expert's part); *Fairchild v. All-American Check Cashing, Inc.*, No. 2:13-CV-92-KS-MTP (S.D. Miss. 2014) (unpublished opinion) (allowed an affidavit to clarify or amplify facts "'by giving greater detail or additional facts not previously provided in the deposition'"); *Jimenez v. Flagstar Bank, F.S.B.*, No. SA-13-CV-186-XR, 2013 WL 6332128, at *4 (W.D. Tex. 2013) (unpublished opinion) (while the affidavit "paraphras[ed] conversation and stat[ed] facts with ambiguity, this conflict raises an issue of credibility rather than admissibility"); *C.R. Pittman Const. Co. v. National Fire Ins. Co. of Hartford*, 453 Fed. Appx. 439, 443 (5th Cir. 2011) (unpublished opinion) (just because an affidavit is "self-serving" the court cannot exclude it as incompetent for that reason alone).

19

We note that Silverbrand has not addressed *any* of the cases cited by Christiansen. They have presented no argument distinguishing them from the case before us to support their position. A party has a duty to show why their position is sound despite contrary authority. Failure to do so results in abandonment of the argument. *State v. Dunham*, 58 Kan. App. 2d 519, 527, 472 P.3d 604 (2020). Their stated reason for not addressing the cases is a misguided belief that Christiansen improperly included copies of the opinions in the appendix to her brief. But Supreme Court Rule 7.04(g)(2)(C) (2021 Kan. S. Ct. R. 46) requires Christiansen to attach any unpublished memorandum opinions "to any document, pleading, or brief that cites the opinion." Christiansen acted appropriately by attaching copies of the unpublished decisions cited in her brief in the appendix. Contrary to Silverbrand's assertion, Christiansen did not attach any published opinions. They ignore Christiansen's arguments at their own peril.

*The district court abused its discretion in striking the affidavit, and Christiansen shows a genuine dispute of material fact to preclude summary judgment.*

We conclude that the district court made an error of fact and law and therefore abused its discretion in striking the affidavits in this case. The law is clear, an affidavit submitted along with a response to a motion for summary judgment does not contradict prior testimony when offered to provide clarification or expand on a previous sworn statement. Christiansen's previous statements about slipping on the ice and falling were fairly nondescriptive. Her affidavit sought to clarify that she slipped on the ice when exiting the vehicle but that a crack/pothole in the parking lot was a major contributing factor in causing her to fall and break her ankle. It also bears mentioning that Christiansen has never denied slipping on the ice, suggesting that she was not trying to contradict her prior testimony since the mere fact of having slipped on ice weakens her claim against Silverbrand. And likewise, Christiansen has never claimed that she was not injured as a result of her foot landing in the pothole. At most her answers were incomplete, not contradictory. As a result, we find that Christiansen's affidavit did not

20

contradict her prior testimony but merely explained the facts surrounding the accident in more detail.

We recognize, as the district court noted, that Christiansen had at least two opportunities to expound upon the cause of the accident. First, in Interrogatory No. 5, Silverbrand directly asked her to "[p]lease describe in detail how the injury occurred." Yet Christiansen's response mentioned only her actions preceding the accident and simply that "my right foot slid on ice and I fell down." But in her subsequent deposition, Christiansen was only asked whether she agreed with the statement that she slipped on the ice. She did. Neither response contradicted her claim in her affidavit that she slipped on the ice but the existence of the pothole caused her to break her ankle. Christiansen has always alleged from her initial petition that "[her] shoe got caught in a large pothole causing her to fall to the ground" and sustain injuries. She alleged that due to lack of maintenance the parking lot was "uneven, deteriorated, pock marked with holes, and rough" and "[d]ue to years of neglect and lack of maintenance, the surface was unreasonably dangerous." She provided pictures of the condition of the parking lot to Silverbrand as part of discovery. She also has always alleged that "[t]he direct and proximate cause of [her] injuries and damages" was the negligence of Silverbrand. The clarification in her affidavit would have come as no surprise.

The nonmoving party is not required to prove their case at the summary judgment stage but must come forward with specific facts supporting their claim. *Drouhard-Nordhus*, 301 Kan. at 623. Likewise, this court must resolve facts and reasonable inferences in Christiansen's favor as the nonmovant. *GFTLenexa, LLC*, 310 Kan. at 982. Unlike in *Bacon* and *Mays*, Christiansen's photos and statement about the cause of her injury are more than mere speculation and raise a genuine dispute of material fact. As a result, we find that the district court erred in granting Silverbrand's motion for summary judgment and reverse that ruling and remand for further proceedings.

21

Reversed and remanded with directions.

* * *

ATCHESON, J., concurring: The sham affidavit doctrine has been a cog in civil procedure machinery across state and federal courts for decades. Kansas is no exception, having recognized a form of the rule more than 50 years ago. Basically, the rule precludes a party from defeating a motion for summary judgment by submitting an affidavit from a witness that contradicts facts in testimony or a sworn statement of the witness submitted in support of the motion. The later conflicting affidavit typically will be treated as a "sham" ginned up solely to create a phony dispute about a material fact and will be disregarded as such. See *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 46-47, 661 P.2d 348 (1983). The rule, however, doesn't bar an affidavit that legitimately explains or elaborates on the earlier representations or offers a bona fide explanation for an apparent contradiction. 233 Kan. at 44 (evidence discovered after first statement may prompt legitimate revision in later affidavit); at 45 (confusing or incomplete questioning in deposition generating first statement permits later clarification); at 46 (second more expansive statement does not create actual conflict).

In a common scenario, plaintiffs opposing defendants' summary judgment motions will offer their own affidavits that differ on a relevant factual point from their deposition testimony used to support the motions. Summary judgment, of course, ought not be granted if there is a *genuine* dispute about one or more material facts. See *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015); *Doe H.B. v. M.J.*, 59 Kan. App. 2d 273, 294, 482 P.3d 596 (2021). So the district court faces a threshold issue: Should the plaintiff's affidavit be considered at all in ruling on the summary judgment motion. Here, the Barton County District Court refused to consider Plaintiff Anita Christiansen's affidavit explaining the mechanics of her slip-and-fall injury in the parking lot of the United States Postal Service building where she worked as a letter carrier. She sustained

22

a severe break of her right ankle. As the parties have framed the governing legal issue for us, if the proximate cause of Christiansen's injury was the ice in the parking lot, then the Postal Service is liable. But if the proximate cause was a negligent failure to repair obvious defects in the parking lot, then the Silverbrand defendants would be liable.

In her petition, Christiansen alleged the parking lot was in poor repair and that "[her] shoe got caught in a large pothole causing her to fall to the ground" and she "sustained personal injuries and damages" as a result. The defendants served interrogatories on Christiansen asking, among other things, for her to "describe in detail how the injury occurred." In her written answer, Christiansen responded, in part, "[M]y right foot slid on ice[,] and I fell down." She did not mention a pothole or any other defect in the surface of the parking lot. The defendants' lawyer took what could be characterized as a terse (or, perhaps, perfunctory) deposition of Christiansen. He asked her to confirm that she told the ambulance personnel and the physician who treated her at the emergency room that she slipped on the ice. Christiansen agreed both that she, indeed, slipped on the ice and told medical providers as much. But the lawyer never asked Christiansen to describe the actual mechanics of her injury, to elaborate on the allegation in the petition, or to explain the ostensible discrepancy between that allegation and her interrogatory response.

Defendants filed a motion for summary judgment, relying on Christiansen's interrogatory answer and deposition testimony to demonstrate that the ice was the sole proximate cause of her broken ankle. In support of her memorandum in opposition to summary judgment, Christiansen signed an affidavit stating that "[m]y right foot started sliding on ice. . . . and then my foot caught the edge of a large crack/pothole in the parking lot." In the affidavit, Christiansen explained that she heard and felt her ankle "snap" when her shoe caught in the pothole. The district court cited the sham affidavit rule and refused to consider the affidavit and granted the defendants' motion for summary judgment.

23

We review the district court's ruling disregarding Christiansen's affidavit for an abuse of discretion. A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Biglow v. Eidenberg*, 308 Kan. 873, 894, 424 P.3d 515 (2018); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

Although now almost 40 years old, the detailed discussion of the sham affidavit rule in *Mays* remains the governing pronouncement of the rule in Kansas and continues to reflect generally accepted contours of the doctrine. See *Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F.4th 832, 842-43 (6th Cir. 2021); *James v. Hale*, 959 F.3d 307, 315-17 (7th Cir. 2020); 73 Am. Jur. 2d Summary Judgment § 57. In *Mays*, the court identified *Powell v. City of Haysville*, 203 Kan. 543, 549, 455 P.2d 528 (1969), as the rule's fountainhead in Kansas. 233 Kan. at 44-45. The doctrine extends beyond deposition testimony and covers interrogatory answers given under oath, too. See *Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 981 (E.D. Cal. 2016); *Estrada v. US Bank, N.A.*, No. 2:18-cv-01361-RGK-AMF, 2018 WL 8785205, at *2-3 (C.D. Cal. 2018) (unpublished opinion); *Dunavant v. Frito Lay*, No. 1:11-0028, 2013 WL 816673, at *4 (M.D. Tenn. 2013) (unpublished opinion).

There is no fully predictive test to determine in the abstract when an affidavit submitted in opposition to summary judgment should be considered an impermissible attempt to defeat the motion by contradicting the affiant's earlier sworn statements. The determination is inevitably contextual and depends upon the substantive issue asserted as the basis for summary judgment, the factual content of the original statement offered in support of the motion, the scope of the conflict or discrepancy between that statement and the challenged affidavit, and any reasons given for the ostensible change. The conclusion effectively depends upon the overall circumstances of the particular case. 10A Wright,

24

Miller & Kane, Fed. Prac. & Proc. Civil § 2726.1 (4th ed. 2021). As such, the assessment has much in common with Justice Potter Stewart's analytical model for hardcore pornography: "I know it when I see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S. Ct. 1676, 12 L. Ed. 2d 793 (1964) (Stewart, J., concurring).

Here, we are in as good a position as the district court to assess the inconsistencies, such as they are, between Christiansen's interrogatory answer and deposition transcript, on the one hand, and her later affidavit, on the other, since they are immutable documents. And we may then determine their legal effect for summary judgment purposes. See *Thoroughbred Assocs., L.L.C. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1207, 308 P.3d 1238 (2013).

Here, the district court misapplied the governing legal framework of the sham affidavit rule. Christiansen's affidavit did not contradict her deposition testimony. In both, she acknowledged slipping on the ice. The affidavit expanded on the cause of her fall to explain how in an immediate and continuous sequence she broke her ankle when her foot met the pothole. During the deposition, defendants' lawyer never asked Christiansen to describe how she injured her foot. Had he examined her in detail on *that* point, Christiansen's omission of any mention of catching her shoe in a pothole likely would have rendered her later affidavit a sham submission.

In the deposition, the lawyer merely confirmed that Christiansen told the ambulance and emergency room medical personnel she slipped on the ice. Christiansen provided that description just after the incident, while she was in considerable pain, to generically explain her injury as a slip-and-fall. That she didn't describe each sequential step leading to her broken ankle seems unremarkable in context. But more to the point, it doesn't create a conflict of the kind the sham affidavit rule is intended to reach. Christiansen's explanation for medical personnel could, of course, be juxtaposed with her affidavit for the fact-finder's consideration at trial.

In isolation, Christiansen's answer to the interrogatory poses a closer question. The question sought a detailed explanation of how she injured her ankle. The response doesn't mention Christiansen catching her shoe in the pothole—something fairly considered more than an incidental aspect of the injury. But the defendants' lawyer did not question Christiansen about the answer during her deposition. And he shouldn't have been surprised by the affidavit in light of the allegations in the petition. On balance and in the context of the pretrial discovery as a whole, I don't see a sufficient discrepancy to bar the affidavit as a sham.

We need say no more, and I do not. I concur in the result reversing the summary judgment for the defendants and remanding for further proceedings.